UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALBERT C. WILLIAMS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 03-cv-4078-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Albert C. Williams's ("Williams") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) and its first supplement (Doc. 4). The government has responded to the motion (Doc. 8). In the wake of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Court allowed Williams to amend his petition (Doc. 11). The government responded to the amendment (Doc. 13), and Williams replied to that response (Doc. 14).

**I.      Background**

In June 1998, Williams was indicted on one count of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count 1) and two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (counts 19 and 20). Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851 based on Williams's two prior felony drug convictions. Williams's case was tried to a jury in March 2000. At trial, Williams was represented by attorney Christian J. Baril ("Baril"). On March 22, 2000, the jury found Williams guilty on all three counts. The indictment and verdict forms contained no specific drug amounts.

On August 30, 2000, the Court held a sentencing hearing.[1] At sentencing, the Court found by a preponderance of the evidence that Williams's relevant conduct was between 150 and 500 grams of crack cocaine, which under United States Sentencing Guideline[2] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 34. The Court also found by a preponderance of the evidence that Williams had possessed a firearm in connection with the offense and that his offense level therefore should be increased by two points under U.S.S.G. § 2D1.1(b)(1), yielding a total offense level of 36. The Court further found that Williams's criminal history category was III. The sentencing range for an offense level of 36 and a criminal history category of III is 235 to 293 months in prison. The Court found, however, that since Williams's relevant conduct was more than 50 grams of crack cocaine, his minimum sentence for that count was established by 21 U.S.C. § 841(b)(1)(A) at 240 months, making his effective range 240 to 293 months. *See Harris v. United States*, 536 U.S. 545, 568 (2002); *United States v. Hernandez*, 330 F.3d 964, 981-82 (7th Cir. 2003), *cert. denied*, 541 U.S. 904 (2004). The Court sentenced Williams to serve 240 months in prison on each count to be served concurrently.

Williams appealed to the Seventh Circuit Court of Appeals, where his new counsel, Lauren Robel ("Robel"), submitted an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). On August 21, 2001, the Court of Appeals allowed Robel to withdraw and dismissed Williams's appeal as frivolous. *See United States v. Williams*, No. 00-3277, 2001 WL 964208 (7th Cir. Aug. 21, 2001). Williams petitioned the United States Supreme Court for a writ of

---

[1] Williams's sentencing occurred before the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005). The impact of those decisions on Williams's case is discussed later in this order.

[2] Unless otherwise noted, the references to the guidelines in this order are to the 1998 United States Sentencing Guidelines Manual.

*certiorari*, which was denied on April 15, 2002. *See Williams v. United States*, 535 U.S. 1004 (2002).

The Court presumes that Williams placed the pending § 2255 motion into the prison mail system to be sent to the Court for filing on or around April 11, 2003, the day he signed the motion. Thus, under the mailbox rule of *Houston v. Lack*, 487 U.S. 266, 276 (1988), his petition satisfied the one-year limitations period imposed in § 2255.

In his § 2255 motion, Williams asks the Court to vacate his conviction and sentence because Baril, his trial counsel, was ineffective during the jury trial and at sentencing. Specifically, he alleges that his counsel was deficient because he (1) failed to request jury instructions regarding multiple conspiracies, a mere buyer/seller relationship and confidential informants, (2) failed to object at sentencing to the calculation of relevant conduct, and (3) failed to argue that Williams's conviction was a variance from the charges. Williams's amendment advances an additional objection to Baril's performance with respect to the calculation of his relevant conduct in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

In response to Williams's § 2255 motion, the government argues that Williams has procedurally defaulted on his claims because he did not raise them on direct appeal and that, even if he had not procedurally defaulted, he has not alleged anything that would establish Baril as constitutionally ineffective. In addition, the government argues that the changes brought about by *Blakely* are not retroactively applicable on collateral review.

**II.     § 2255 Standard**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt*

3

*v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000);  *Prewitt*, 83 F.3d at 816.  A defendant cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

Neither is a § 2255 motion necessarily a second chance at a successful appeal.  The Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.  *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995);  *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum.  They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro*, 538 U.S. at 504-05;

*Fountain*, 211 F.3d 433-34.  In addition, the district court before which the original criminal trial occurred is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and the potential prejudice that stemmed from that performance. *Massaro*, 538 U.S. at 504-05.[3]  For these reasons, the Court finds that Williams has not procedurally defaulted his ineffective assistance of counsel claims.

**III.    Analysis**

The Court finds that Williams has not presented any evidence or argument meriting either a hearing or relief under § 2255.  As noted earlier in this order, Williams asks the Court to vacate his conviction on the basis of several alleged instances of ineffective assistance of counsel.  A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).  The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

---

[3]The Seventh Circuit used to adhere to the position that where the claimed instances of ineffective assistance of counsel are clearly and completely reflected within the district court record and none of those instances turn on events outside the record and where the defendant had new counsel on appeal that could have vigorously argued trial counsel's ineffectiveness, there is no fundamental miscarriage of justice, and the defendant must show cause and prejudice before he is allowed to raise the issue in a § 2255 motion. *See McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996).  The Supreme Court rejected this position in *Massaro* and held that ineffective assistance of counsel may, but is not required to, be raised for the first time in a § 2255 motion even if the alleged conduct is fully reflected in the record and the defendant had new counsel on appeal. *Massaro*, 538 U.S. at 504.

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434.

  A. <u>Failure to Request Jury Instructions</u>

For the following reasons, the Court finds that Baril was not constitutionally ineffective in relation to the selection of jury instructions.

Williams argues that Baril was ineffective for failing to ask the Court to give several jury instructions: a multiple conspiracy instruction, a buyer/seller instruction and a limiting instruction regarding confidential informant testimony. Jury instructions are proper if they are adequately supported by the record and are fair and accurate summaries of the law. *United States v. Stott*, 245 F.3d 890, 903 (7th Cir. 2001); *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000); *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir. 1996). However, a defendant is only entitled to an instruction on a particular theory of defense if "1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would

deny a fair trial." *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003) (citing *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002)).

        1.        <u>Multiple Conspiracy Instruction</u>

Williams believes that the evidence showed that he was part of a conspiracy to distribute marihuana that differed from the conspiracy to distribute crack cocaine that was charged in the indictment. He believes that the evidence created the possibility that the jury could have convicted him of the charged crack cocaine conspiracy because it found that he had been a part of the uncharged marihuana conspiracy and that his attorney therefore should have requested the following instruction:

> You may judge the defendants only on the charges in the indictment. You may not convict him on any other conspiracy or alleged conspiracy, in the event you should conclude that he has engaged in some other conspiracy. Therefore, if you are not convinced beyond a reasonable doubt that a particular defendant knowingly and intentionally joined the conspiracy alleged in the indictment, you must find the defendant not guilty.

> The jury instructions actually given included the following:

> To sustain the charge of conspiracy, the government must prove these elements beyond a reasonable doubt:
>
>     First, that the conspiracy as charged in Count 1 existed, and
>
>     Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.
>
>     If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
>     If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

The Court allowed the jury to review the indictment during its deliberations, which contained the following charge as count 1:

> From in or about April 1997, to on or about May 12, 1998, in Williamson and Jackson Counties, within the Southern District of Illinois, . . . [other defendants and] Albert C. Williams . . . did conspire and agree with each other and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute a mixture and substance containing cocaine base, commonly known as crack cocaine, a Schedule II, narcotic controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

In light of the evidence presented at trial and the jury instructions as a whole, the Court finds that Williams has pled nothing that would establish Baril as deficient for failing to request a multiple conspiracy instruction. While the Court does not quibble with Williams's proposed instruction as an accurate statement of the law, such an instruction was clearly not supported by the evidence. In this case there was no evidence of a conspiracy to distribute crack cocaine other than the one charged in the indictment. The vast majority of the evidence related either to Williams's supplying crack cocaine to his ex-wife, Nicola Williams[4], for further distribution to her customers or to Williams' provision of crack cocaine directly to those customers, even sometimes for further distribution by them. While there was some evidence that Williams might have also been involved in distributing marihuana, the most that such evidence could have established was that the charged conspiracy also included the purpose of distributing marihuana, not that a separate conspiracy to distribute marihuana existed or that the jury could have convicted Williams of the charged crack cocaine conspiracy because of his marihuana activities.

---

[4]Williams's ex-wife's name is spelled various ways at various stages of Williams's criminal and § 2255 proceedings: Nicola (trial transcript), Nicole (§ 2255 motion) and Necola (government's response to § 2255 motion).

In view of the evidence at trial, Baril's decision not to request a multiple conspiracy instruction was simply not outside the realm of professionally competent assistance.

*Wims v. United States*, 983 F.3d 1074, 92 WL 393299 (7th Cir. Dec. 12, 1992), an unpublished opinion cited by Williams in his motion, does not require the Court to find otherwise.  In *Wims*, there was evidence from which a reasonable jury could find a separate conspiracy to distribute the same drug not involving the defendant.  There, the defendant was the supplier of crack cocaine in one of two transactions initiated by an undercover agent.  *Wims*, 92 WL 393299, at *1.  The Court of Appeals held that the defendant's counsel was constitutionally ineffective for recognizing but failing to argue on appeal that a multiple conspiracy instruction should have been given where there was the possibility that the defendant and the supplier of the crack cocaine in the other transaction were not part of the same conspiracy.  *Id*. at *3.  *Wims* can be distinguished from the case at bar because there was simply no evidence in this case of any other conspiracy to distribute crack with which Williams was not involved and that was not charged in the indictment.  There was simply no evidence of multiple conspiracies.

Furthermore, Williams was not prejudiced by Baril's failure to make such a request because the jury was adequately advised of what it needed to find in order to convict Williams of conspiracy.  The conspiracy instruction given by the Court directed that, in order to find Williams guilty of conspiracy, it must find that he knowingly participated in the *conspiracy charged in count 1 of the indictment*, to which the jury had access during its deliberations, that is, a conspiracy to distribute crack cocaine.  This is sufficient to ensure that the jury was properly instructed and that the defendant received a fair trial and suffered no prejudice from the lack of a multiple conspiracy instruction.  *See United States v. Briscoe*, 896 F.2d 1476, 1514 (7th Cir. 1990); *see also United States v. Shorter*, 54 F.3d 1248, 1257 (7th Cir. 1995).  As a consequence,

there is no reasonable probability that the outcome of the trial would have been different had Baril requested and had the Court given a multiple conspiracy instruction.

### 2. Buyer/Seller Instruction

Williams also believes that Baril was constitutionally ineffective for failing to request a buyer/seller instruction in light of the evidence that both Williams and Nicola Williams made direct sales to some individuals. He believes that the jury should have been instructed that a buyer-seller relationship does not constitute a conspiracy. The Court presumes that Williams would have been satisfied with Seventh Circuit Court of Appeals Pattern Instruction 6.12:

> The existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell [the crack cocaine.] The fact that a defendant may have bought [crack cocaine] from another person or sold [crack cocaine] to another person is not sufficient without more to establish that the defendant was a member of the charged conspiracy.
>
> In considering whether a conspiracy or a simple buyer-seller relationship existed, you should consider all of the evidence, including the following factors:
> (1) Whether the transaction involved large quantities of [crack cocaine];
> (2) Whether the parties had a standardized way of doing business over time;
> (3) Whether the sales were on credit or on consignment;
> (4) Whether the parties had a continuing relationship;
> (5) Whether the seller had a financial stake in a resale by the buyer;
> (6) Whether the parties had an understanding that the [crack cocaine] would be resold.
>
> No single factor necessarily indicates by itself that a defendant was or was not engaged in a simple buyer-seller relationship.

Again, Williams has failed to allege anything that shows Baril was deficient for failing to request such an instruction or that Williams suffered any prejudice as a result. The instruction was simply not supported by the evidence. The overwhelming evidence at trial demonstrated that Williams's crack cocaine activities – both his supplying crack cocaine to Nicola Williams

and his and her selling it to other individuals – was pursuant to an agreement with her and others to distribute crack cocaine. There is simply no way a reasonable jury could find based on the evidence that Williams's sales of crack cocaine were not a part of this larger conspiratorial scheme.

Furthermore, even if Baril had requested and the Court had elected to give a buyer/seller instruction, there is no reasonable probability that the result of the proceedings would have been different. It is easy to determine from a quick look at the factors the jury would have been told to consider in a buyer/seller instruction that the evidence overwhelmingly supports a conspiracy finding, not a buyer/seller relationship. Williams sent large quantities of crack cocaine to Nicola Williams without prepayment from her with the understanding that she would resell them to other individuals and distributors and send part of the money she received back to him. He had a standard way of sending the drugs – mail or personal delivery – and she had a standard way of paying him – wiring money. They had an ongoing relationship, and he even assisted her in some sales, stepped in to make other sales when she was unavailable, and collected on debts owed from her prior sales of crack cocaine. This is a quintessential conspiracy, not a buyer/seller relationship. In fact, Williams even admits in the memorandum in support of his § 2255 motion that he conspired with Nicola Williams to distribute marihuana and crack cocaine. Williams has not demonstrated anything that would lead the Court to believe there is a reasonable probability that, had a buyer/seller instruction been given, the results of the proceedings would have been any different. Because Williams was not prejudiced by Baril's failure to request a buyer/seller instruction, Williams is not entitled to § 2255 relief on this basis.

3.   <u>Confidential Informant</u>

Williams also faults Baril for failing to request an instruction stating that, as a matter of law, confidential informants cannot be considered to be coconspirators. He notes that two of the witnesses against him at trial, Elsie and Scott McClure, were working as confidential informants at the time they purchased crack cocaine from Williams. He believes Baril should have requested an instruction similar to the following:

> I instruct you that the confidential informants Elsie and Scott McClure cannot be considered by you to be bona-fide coconspirators.

The Court did not include any instruction on this topic in its charge to the jury.

The government argues that Elsie and Scott McClure's testimony about their controlled buys while working as confidential informants were relevant to prove counts 19 and 20, the two distribution counts, and that their testimony about prior drug dealings were relevant to count 1, the conspiracy count. In light of the overwhelming evidence against Williams on count 1, the government argues, the jury would not have been confused or misled into believing that the testimony regarding the controlled buys was offered to support a conspiracy between Williams and either of the McClures.

Again, the Court finds that Williams has not alleged anything to show that Baril was constitutionally ineffective for failing to request a jury instruction regarding confidential informants. The Court takes no issue with whether the proposed instruction is a correct statement of the law, but finds that the instruction was not necessary to a fair trial and, as for Scott McClure, was not supported by the evidence. The Court has reviewed the testimony presented at trial from all witnesses and finds that there was overwhelming evidence that Williams conspired with Nicola Williams to distribute crack cocaine. The evidence that

Williams conspired with the McClures was scant – Elsie McClure told Williams once during a controlled buy that she was buying drugs from him to provide to another distributor. In addition, the government did not highlight this statement or suggest to the jury that Williams conspired with either of the McClures during the controlled buys but instead focused on Williams's relationship with Nicola Williams. In light of such evidence and argument, there is simply no possibility that a reasonable jury could have based its verdict solely on a finding that Williams conspired with either of the McClures. Baril's failure to request an instruction eliminating Elsie and Scott McClure as potential coconspirators was simply not required for a fair trial.

As for Scott McClure in particular, his testimony focused primarily on his transferring ownership of a vehicle to Williams in payment for a drug debt that was not accumulated during a controlled buy for which he was acting as a government agent. There was absolutely no danger that such testimony could have led the jury to mistakenly find that Scott McClure could have conspired with Williams during the controlled buys in which he was acting as a government agent.

In sum, Baril was not deficient for failing to request a jury instruction excluding Elsie and Scott McClure as potential coconspirators during their controlled buys. The thrust of the government's case was on Williams's relationship with Nicola Williams, and Baril could have reasonably decided that a jury instruction about Elsie and Scott McClure was distracting and immaterial. Furthermore, for the foregoing reasons, the Court finds that Williams was not prejudiced by the omission of such an instruction. Williams is not entitled to § 2255 relief on this basis.

B.      Failure to Object to Relevant Conduct Calculation

For the following reasons, the Court finds that Baril was not constitutionally ineffective in relation to the calculation of Williams's relevant conduct at sentencing.

Williams argues that Baril was ineffective for failing to object to the Court's finding that Williams's relevant conduct exceeded 150 grams of crack cocaine. He believes that relevant conduct amounts provided by Edgar Jones should not be counted because Jones was not a coconspirator. He further argues that other amounts should not have been counted because they were not supported by reliable evidence in the record. Finally, he claims that some amounts should not be counted if his relevant conduct is determined based solely on the amount of money Nicola wired to him – $14,790 – and that of that sum, two-thirds was for marihuana, not crack cocaine. The government counters that the evidence upon which Williams's relevant conduct finding was based was reliable and was therefore sufficient to support the finding.

When a § 2255 petitioner faults his attorney for failing to object and present evidence at trial or at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 2194 (2004). Thus, to prevail in his argument on this matter, Williams must show what evidence Baril could have presented to show that Jones was not a part of the conspiracy such that Williams could be held accountable for his foreseeable acts in furtherance of the conspiracy. He also must show what evidence Baril could have presented to show that the statements upon which the Court's relevant conduct finding was based were not reliable or to show that two-thirds of sales was from marihuana and not crack cocaine. Williams has not alleged any such evidence. In the absence of any specific

14

information that Baril could have presented to alter the relevant conduct calculation, the Court cannot say that he was deficient for failing to object and cannot say that, had he objected and presented such evidence, there was a reasonable probability that Williams's sentence would have been different.

      C.      <u>Failure to Argue Variance</u>

While Williams mentions this variance argument, he does not support it at all in his memorandum in support of his § 2255 motion. Perfunctory, underdeveloped and unsupported arguments are waived. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000). Because he has failed to develop or support this argument, Williams has waived it. Even if he had not waived the argument, he has failed to demonstrate that Baril was deficient for failing to argue that his conviction was a variance from the charges or that he suffered any prejudice from Baril's failure to make that argument.

      D.      <u>Failure to Object to Sentencing Without Jury Finding of Relevant Conduct</u>

Williams faults Baril for failing to object when the Court found a guideline range, and sentenced Williams within that range, based on a relevant conduct drug amount not supported by the jury's verdict, which found that he had distributed some unspecified quantity of crack cocaine. Williams argues that the offense level established by the jury's verdict found beyond a reasonable doubt is 12, which with his criminal history category of III[5] yields a sentencing range

---

[5] Williams claims in his brief that he fits into criminal history category II but has not provided any explanation of why he believes his criminal history category of III, as found by the Court at sentencing, was incorrect. Because the sentencing range to which Williams refers in his motion corresponds to criminal history category III, the Court assume that his reference to criminal history category II is a typographical error.

of 15 to 21 months.  The government argues that Williams has made this argument too late, that he has procedurally defaulted on the argument and that, in any case, the argument has no merit.  The Court has already addressed the issue of procedural default in ineffective assistance of counsel claims earlier in this order and will not address it here again.

    a.    <u>Timeliness</u>

Section 2255, ¶ 6, requires a petitioner to make his claims, with some exceptions that do not apply here, within one year of when his conviction became final.  Williams attempts to add an additional ineffective assistance of counsel argument in his July 19, 2004, amendment, more than a year after his conviction became final on April 15, 2002, the day the Supreme Court denied his petition for a writ of *certiorari*.  However, because Williams additional argument challenges the same sentence his original motion challenges, his additional argument relates back to the date of his original petition and is therefore timely.  *See Ellzey v. United States*, 324 F.3d 521, 526 (7th Cir. 2003);  Fed. R. Civ. P. 15(c).

    b.    <u>Merits</u>

At first blush, Williams's *Blakely* argument has some appeal.  While at the time Williams was tried the argument would have been soundly rejected, after *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *judgment aff'd & remanded*, 125 S. Ct. 738 (2005), the legal landscape changed.  *Blakely* applied the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to a Washington state sentencing scheme similar to the federal sentencing guidelines.  In *Blakely*, the defendant pled guilty to second-degree kidnaping, a class B felony that carried a standard sentencing range of 49 to 53 months.  *Blakely*, 124 S. Ct. at 2535.  In general, class B felonies in Washington could not be punished by prison sentences exceeding ten years.  *Id.*  The sentencing judge found that aggravating factors

16

existed to justify an exceptional sentence of 90 months, still well within the permissible class B felony range but also well beyond the standard range for second-degree kidnaping.  *Id.*  The Supreme Court held, however, that because the facts to which the defendant pled could only support a standard range sentence, *Apprendi* precluded the judge from making further findings to enhance the sentence, even if the sentence still fell within the class B felony range.  *Id*. at 2537-38.  In essence, the *Blakely* Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Blakely,* 124 S. Ct. at 2537 (emphasis in original).  Therefore, because only the 49 to 53 month range was justified by the defendant's plea and any higher sentence was subject to reversal considering *only the facts admitted in the plea*, the defendant's sentence must fall within that range.  *Id.* at 2538.

In *Booker*, the Seventh Circuit Court of Appeals applied *Blakely* to the federal sentencing guidelines system and held that (other than criminal history) only facts proven to a jury beyond a reasonable doubt or admitted by a defendant could be used to calculate a sentence under the guidelines.  *Booker*, 375 F.3d at 510-12.  The Supreme Court ultimately confirmed that *Blakely* applies to the federal sentencing guidelines and that application of the guidelines as written is unconstitutional because of their mandatory nature.  *United States v. Booker*, 125 S. Ct. 738, 746, 749-50 (2005).  However, the Supreme Court held that the proper remedial measure to save the guidelines is not to require that special findings be submitted to a jury.  *Id.* at 759-64.  The proper remedial measure, the Court decided, is to strike the portions of the Sentencing Reform Act of 1984 that make application of the guidelines mandatory as opposed to advisory:  18 U.S.C. §§ 3553(b)(1) and 3742(e).  *Id.* at 764-67.  Those provisions having been stricken from the Sentencing Reform Act, judges, "while not bound to apply the Guidelines,

17

must consult those Guidelines and take them into account when sentencing." *Id.* at 767; *see* 18 U.S.C. § 3553(a)(4) & (5).

The key issue in this case, however, is not whether Williams's sentence would have or could have been any different in a post-*Blakely* and post-*Booker* world. It is whether Baril was constitutionally deficient for failing to anticipate the change in the legal landscape that resulted from *Blakely*. It is clear that Baril was not deficient for failing to raise a *Blakely*-like argument at trial. Although the foundation for such an argument existed at the time, the argument was doomed to fail before the Supreme Court issued *Blakely*. Counsel cannot be faulted for failing to anticipate the change in the law brought about by *Blakely* or *Booker*. *See Fuller v. United States*, 398 F.3d 644, 651 n. 4 (7th Cir. 2005). Because Williams cannot show that Baril was deficient in his performance, the Court will not grant § 2255 relief on this basis.

        c.        <u>Possible Direct Challenge to Sentence</u>

To the extent that Williams raises a direct challenge based on *Apprendi* and *Blakely*, rather than through the ineffective assistance of counsel route, he has procedurally defaulted on the claim and, even if he had not procedurally defaulted, the Court would reject his argument.

Williams failed to argue on direct appeal that a jury must determine beyond a reasonable doubt the quantity of drugs that can be considered as relevant conduct and any other facts (except criminal history) used to enhance a sentence under the federal sentencing guidelines. He certainly could have raised the issue on appeal, for the principles underlying that argument were established in *Apprendi*, which was issued several months prior to Williams's sentencing hearing. Because he did not raise the argument, he has procedurally defaulted and can only raise the issue now if he can show cause for and prejudice from the failure to raise the issue on direct appeal or if he can show a fundamental miscarriage of justice. He has done neither. In a vague

and conclusory statement in his § 2255 motion, which the Court presumes also applies to his supplemental petition, Williams asserts that the failure to raise the argument on appeal was the result of ineffective assistance of appellate counsel.  It is true that ineffective assistance of appellate counsel can constitute cause for failure to raise an issue on direct appeal.  *See Franklin v. Gilmore,* 188 F.3d 877, *84 (7th Cir. 1999) (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) (holding that appellate counsel is ineffective "only when ignored issues are clearly stronger than those presented")) (§ 2254 context).  However, for the same reasons that the Court rejected Williams's argument that Baril was ineffective for failing to raise a *Blakely*-like argument at trial, it also rejects Williams's claim that Robel was similarly ineffective on appeal.  Williams has simply not alleged enough to show that ineffective assistance of appellate counsel provided cause for his procedural default.

Even if Williams had not procedurally defaulted on his direct *Blakely* argument, the Court would reject it.  The Court of Appeals for the Seventh Circuit, which binds this Court to follow its precedent, has held that *United States v. Booker*, 125 S. Ct. 738 (2005), which articulates the principles on which Williams's § 2255 amendment is based, is not retroactively applicable on collateral review.  *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir. 2005);  *see also Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) (*Apprendi* does not apply retroactively on collateral review);  *Schriro v. Summerlin*, 124 S. Ct. 2519, 2525-26 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002), which relied on the same principles as *Apprendi*, does not apply retroactively on collateral review).  For this reason, it is of no assistance to Williams, and he is not entitled to § 2255 relief on that basis.

IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Williams's § 2255 motion (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  April 26, 2005**

                                    s/ J. Phil Gilbert
                                    **J. PHIL GILBERT**
                                    **DISTRICT JUDGE**